## LOREN E. BAKER, JR. *v.* LAURIE E. BAKER
### (AC 16795)

Foti, Spear and Hennessy, Js.

Submitted on briefs December 5, 1997—officially released February 10, 1998

*Kenneth J. McDonnell* filed a brief for the appellant (plaintiff).

*Lisa A. Faccadio* and *Christine S. Dorsey* filed a brief for the appellee (defendant).

*Opinion*

FOTI, J. The plaintiff, Loren E. Baker, Jr., appeals from the judgment of the trial court granting his motion to modify the judgment of dissolution of marriage and awarding him $25 per week in child support.[1] The plaintiff claims that the trial court (1) improperly found that

---

[1] The plaintiff claims that pursuant to the child support guidelines, he is entitled to more than $25 per week in child support.

the parties' financial agreements justified a substantial deviation from the child support guidelines (2) failed to identify the specific criteria that justified its deviation from the guidelines, (3) failed to calculate a child support order based on the guidelines before finding the order to be inappropriate, and (4) abused its discretion in deviating from the guidelines by such a substantial amount. We reverse the judgment of the trial court.

The marriage of the parties was dissolved on February 6, 1991. The terms of the decree were based on a written agreement of the parties that was approved by the court and incorporated by reference in the judgment. The parties were awarded joint custody of their two minor children. The primary residence of the children was to be with the plaintiff. Pursuant to the judgment, the defendant, Laurie E. Baker, had visitation rights with the children three weekends a month from Friday through Sunday and every Wednesday overnight. The defendant was not ordered to pay child support, but was responsible for the children's needs while they were physically in her care. The judgment specifically allowed for modification to permit the plaintiff to seek child support in the future. The court noted that as of October 1, 1991, subsequent to the rendering of the judgment, General Statutes (Rev. to 1991) § 46b-86[2]

[2] General Statutes § 46b-86 provides in relevant part: "(a) Unless and to the extent that the decree precludes modification, any final order for the periodic payment of . . . support . . . may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in circumstances of either party *or upon a showing that the final order for child support substantially deviates from the child support guidelines established pursuant to section 46b-215a, unless there was a specific finding on the record that the application of the guidelines would be inequitable or inappropriate.* There shall be a rebuttable presumption that any deviation of less than fifteen per cent from the child support guidelines is not substantial and any deviation of fifteen per cent or more from the guidelines is substantial. Modification may be made of such support order without regard to whether the order was issued before, on or after May 9, 1991. In determining whether to modify a child support order based on a substantial deviation from such child support guidelines the court shall

would be amended to recognize a substantial deviation from the guidelines as a ground for modification of an order for child support. The parties' agreement, however, required both a showing of a substantial change in circumstances and a substantial deviation from the guidelines to warrant a modification.[3]

On October 7, 1991, the parties returned to court and filed a written stipulation in response to the plaintiff's motion to modify the defendant's visitation rights and to order the defendant to pay child support. Pursuant to their agreement, the parties modified the hours and days of visitation and further agreed that there would be no child support paid to the plaintiff in consideration of the defendant's representation that she would feed the children dinner during her visits. In acting on the plaintiff's motion, the court made no finding that the application of the guidelines would be inequitable or inappropriate.[4] In addition, the court made no reference to criteria that would justify a deviation from the amount specified in the guidelines. See Regs., Conn. State Agencies § 46b-215a-3.

On November 28, 1994, the parties filed a stipulation with the court in response to the plaintiff's second motion for modification. Pursuant to the agreement, the defendant's weekday visitations with the children

consider the division of real and personal property between the parties set forth in the final decree and the benefits accruing to the child as a result of such division. After the date of judgment, modification of any child support order issued before or after July 1, 1990, may be made upon a showing of such substantial change of circumstances, whether or not such change of circumstances was contemplated at the time of the dissolution. By written agreement, stipulation or by decision of the court, those items or circumstances that were contemplated and are not to be changed may be specified in the written agreement, stipulation or decision of the court. . . ." (Emphasis added.)

[3] At the time they entered into their agreement, the parties were aware that the guidelines would become effective on March 1, 1991.

[4] The guidelines would have required a payment of child support from the defendant to the plaintiff in the amount of $105.74 per week.

were eliminated and her weekend visitation schedule was reduced to every other weekend during the school year. The plaintiff did not seek child support and the parties did not submit financial affidavits.

On September 10, 1996, the plaintiff filed a third motion for modification seeking child support pursuant to the guidelines.[5] The parties filed financial affidavits and a hearing was held on October 15, 1996, at which time the parties agreed that the amount of child support recommended by the guidelines was between $85 and $86 per week. The trial court found a substantial change in the circumstances of the parties because of the defendant's reduced visitation schedule. On December 24, 1996, the trial court entered the following order: "The court finds that it would be inappropriate to apply the guidelines, as the entire history of the financial agreements made by the parties must be considered. Support orders have not entered in the past, in consideration of [the defendant's] visitation expenses and the prior financial agreements [of the parties]. In 1994, support was not before the court. Given that the [defendant's] visitation has decreased, the court finds it appropriate to enter an order, though not, because of the earlier agreements, one in accord with the guidelines. The court orders the defendant to pay $25 per week (except for her vacation weeks) to the plaintiff as child support, pursuant to contingent wage withholding."

The plaintiff argues that it was improper for the trial court to focus on the financial agreements of the parties without explaining how those agreements benefitted the children so as to justify a deviation from the guidelines. We agree.

---

[5] In his motion, the plaintiff claimed that "[s]ince the date of judgment, there has been a significant change in circumstances including, but not limited to, the fact that the present lack of an order of child support is not in compliance with the child support guidelines."

"General Statutes § 46b-215b[6] provides that the child support guidelines shall be considered in all determinations of child support amounts." *McHugh* v. *McHugh*, 27 Conn. App. 724, 727, 609 A.2d 250 (1992). Section 46b-215a-3 (a) of the Regulations of Connecticut State Agencies provides that "[t]he amount of current support calculated under the child support guidelines is presumed to be the correct amount to be awarded. The presumption may be rebutted by a specific finding on the record that the application of such guidelines would be inequitable or inappropriate in a particular case. Any such finding shall state the amount of support that would have been required under the guidelines and include a justification for the variance. *Only the deviation criteria described in this section establish sufficient bases for such findings.*" (Emphasis added.)

Although the trial court found it appropriate to enter an order not in accord with the guidelines, it failed to refer specifically to the criteria that justified a deviation from the guidelines. See, e.g., *Turner* v. *Turner*, 219 Conn. 703, 720, 595 A.2d 297 (1991) (court must make specific finding on record that application of guidelines inequitable or inappropriate based on factors set forth in methodology and general provisions of guidelines as well as specific figures set forth for defendant's adjusted income level); *Feliciano* v. *Feliciano*, 37 Conn. App. 856, 859, 658 A.2d 141 (1995), aff'd, 236 Conn. 719, 674

---

[6] General Statutes § 46b-215b (a) provides: "The child support and arrearage guidelines promulgated pursuant to section 8 of public act 85-548 and any updated guidelines issued pursuant to section 46b-215a shall be considered in all determinations of child support amounts and payment on arrearages and past due support within the state. In all such determinations there shall be a rebuttable presumption that the amount of such awards which resulted from the application of such guidelines is the amount of support or payment on any arrearage or past due support to be ordered. A specific finding on the record that the application of the guidelines would be inequitable or inappropriate in a particular case, as determined under criteria established by the commission under section 46b-215a, shall be sufficient to rebut the presumption in such case."

A.2d 1311 (1996) (presumption that amount of support calculated under guidelines appropriate amount of support to be ordered by court "can be rebutted only if the trial court finds, on the record, that it would be inequitable or inappropriate to apply the guidelines because of evidence satisfying one of the deviation criteria"). Because the trial court did not justify its decision to deviate from the guidelines on one of the deviation criteria set forth in the regulations, we cannot conclude that the trial court properly relied on the terms of the parties' previous financial agreements to justify a deviation from the guidelines.[7]

We conclude that the trial court failed to identify properly the deviation criteria justifying its order of child support that was not in accord with the guidelines.[8]

The judgment is reversed and the case is remanded for a new hearing.

In this opinion the other judges concurred.

---

[7] In deviating from the guidelines, the trial court relied on the "entire history of the financial agreements made by the parties." This is not one of the deviation criteria set forth in the regulations. In fact, the deviation criteria most similar to what the court referred to as "the entire history of the financial agreements made by the parties" is § 46b-215a-3 (b) (5) of the Regulations of Connecticut State Agencies, which provides: "Coordination of total family support. In some cases, the trier of fact may consider child support in conjunction with a determination of total family support, property settlement, and tax implications. When the trier of fact finds that such considerations will not result in a lesser economic benefit to the child, it may be appropriate to deviate from the guidelines amount for the following reasons:

"(A) division of assets and liabilities

"(B) provision of alimony

"(C) tax planning considerations."

[8] Because we remand for a new hearing, we find it unnecessary to address the other issues raised by the plaintiff on appeal.