[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON POST JUDGMENT MOTION TO MODIFY ALIMONY
The motion is denied.
The defendant has moved to terminate alimony. The title of his motion, however, is as stated above to modify alimony.
A decree of dissolution of the parties' marriage was entered on October 4, 1999, after a marriage of nineteen years. At the time of entry of the decree, the parties executed an agreement which provided in Article V that the defendant would pay alimony to the plaintiff until the first to occur of the following events:
"a. wife's remarriage;
b. wife's cohabitation pursuant to statute;
c. death of either party;
d ten (10) years from the date of termination."
The court entered judgment in accordance with the parties' agreement and incorporated the same in the judgment.
The defendant in his motion has recited the following:
 "Whereas pursuant to Paragraph 5.1 of the parties' separation agreement, periodic alimony terminates upon plaintiff's cohabitation as defined therein, and
 Whereas, Connecticut General Statutes § 46b-86 (b) provides a separate and independent basis for CT Page 10976 termination of alimony upon a showing of cohabitation as defined in the statute.
It would appear that the alimony should terminate upon a showing of plaintiff's cohabitation. It would appear, also, that the defendant is claiming termination upon a showing of "cohabitation as defined in the statute."
The Appellate Court recently has explained the difference between a termination of alimony because of operation of a cohabitation clause in a judgment and a modification under § 46b-86 (b) of the General Statutes. DeMaria v. DeMaria, 47 Conn. App. 672 (1998). The latter required proof of living together and a resultant change in the alimony recipient's financial circumstances. Mihalyak v. Mihalyak,30 Conn. App. 516, 520-21 (1993).
The language used in the Separation Agreement is not unlike that used in the case of D'Ascanio v. D'Ascanio, 237 Conn. App. 481 (1996). TheD'Ascanio case provided for a specific reduction to one half the alimony if the court found "cohabitation as defined by statute." There the court found cohabitation "as defined by statute" and reduced the alimony by one half as the the parties had provided in their property settlement agreement at the time of dissolution.
The parties here agreed that alimony should terminate upon a finding of cohabitation "pursuant to statute" (also see page 7 of the judgment file). As has been stated by the court in DeMaria, cohabitation is defined by statute as a "two pronged burden of proving (1) the party receiving alimony was living with another person and (2) the living arrangement caused a change of circumstances to alter that party's financial needs." As must be noted, the requirements of (2) above are different from the burden required by § 46b-86 (a) that such an order may be continued, set aside, altered or modified upon a showing of a "substantial change" in the circumstances of another party. Thus, §46b-86 (b) is requiring proof that the living arrangements created a change of circumstances as to alter the alimony recipient's financial needs contrasted with § 46b-86 (a) which required a "substantial change in circumstances."
The plaintiff is living with another. She moved to Vincent Cacase's condominium in October, 1999. Prior to that time, she had been living at her brother's apartment sleeping on the couch. At Mr. Cacace's, she has her own room and her own bed. In the summer of 2000, she and Mr. Cacace lived in Florida from the end of June to the end of August. He paid the rent and all expenses. They have had sexual relations. In the summer of 2001, she has been living in Mr. Cacace's condominium while he is again CT Page 10977 in Florida. The court finds that the defendant has sustained his burden of proving the parties are living together and the court does so find.
It is the second burden of the two pronged requirement which the defendant has failed to prove. At the time of the decree, the plaintiff's net worth was negative $2500. She received $1000 by way of lump sum alimony at the time of the decree of dissolution. She also received the 1995 Saturn automobile which she was driving. She, however, became obligated on the car loan. The automobile was valued at $7200 with a loan balance of $5300 or a net equity of $1900. Her net assets, therefore, after the decree amounted to $400. Her present net worth is negative $6400. She has no car. The $1,000 she received by way of property settlement is gone. She reports $382 in checking accounts and $12.00 in a savings account.
At the time of the decree of dissolution, the plaintiff was working as a cafeteria aide for the City of Bridgeport earning a net of $217 per week. She is still working as a cafeteria aide earning a net of $186 per week. Her gross pay has been reduced from $269 to $231. Her weekly expenses are currently $234. At the time of the decree, they were $255. At the time of the decree of dissolution, she was living with her brother, sleeping on a couch. She paid him $38.00 per week rent. She now pays no rent
For the reasons set forth above, the defendant's motion is denied.
EDGAR W. BASSICK, III JUDGE TRIAL REFEREE